## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANELLE MCDOWELL and STEPHANIE SANDERS, | ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 1:06-CV-314-CSC |
| SOUTHERN NUCLEAR OPERATING COMPANY, INC., | ) ) ) | |
|     Defendant. | ) | |

### DECLARATION OF JOHN RANDAL ("RANDY") JOHNSON

1.     My name is Randy Johnson, and I am over the age of majority.  I have personal knowledge of the matters in this declaration.

2.     I am employed by Southern Nuclear Operating Company at the Joseph M. Farley Nuclear Plant ("Plant Farley") as the General Manager.  I have been in this position since October 2004.  I was the Plant's Assistant General Manager – Operations prior to being promoted to my current position.

3.     In late July 2005, I became aware of a harassment complaint from two Helpers in the Facilities group, Tammy Caldwell ("Caldwell") and Jennifer White ("White").  Caldwell and White alleged that they were being harassed and subjected to a hostile working environment by other Helpers within the work group.  Maintenance Superintendent Jim Parrish ("Parrish") and Facilities Supervisor Deborah Crutchfield ("Crutchfield") initially interviewed Caldwell and White about their claims.

4.     Thereafter, the Company's Employee Relations Department was asked to investigate and Sharon Bestwick, an Employee Relations Coordinator assigned to handle such issues for Plant Farley, was assigned to conduct the investigation.

5.    At the end of the investigation, Sharon reported that four female Helpers were believed to have contributed to a hostile working environment for Caldwell and White.    Those Helpers were Phyllis Hughes ("Hughes"), Janell McDowell ("McDowell"), Stephanie Sanders ("Sanders"), and Doris Ashford ("Ashford").

6.    Contemporaneous with the harassment investigation, Facilities supervision learned that several Helpers had disregarded an express directive from supervision and swapped job assignments without Facilities Supervision's approval.    The Helper group previously had been instructed that they were not to swap job assignments unless a member of Facilities Supervision approved the assignment change.    The employees identified as having swapped jobs without appropriate supervisory approval were Phyllis Hughes, Leonard Russ, Janell McDowell, Stephanie Sanders, Doris Ashford, and Bobby White.

7.    Discipline was issued to several Facilities Helpers as a result of both the harassment investigation and the discovery of unauthorized job swapping.    Helpers believed to have engaged in misconduct in both instances and who were disciplined accordingly were the following: Phyllis Hughes, a white female, Janell McDowell, an African American female, Stephanie Sanders, an African American female, and Doris Ashford, an African American female.

8.    Both McDowell and Ashford received Decision Making Leave ("DML"), the highest level of discipline under Southern Nuclear's Positive Discipline Policy.

9.    Although McDowell historically was a solid performer, she was issued a DML based on our belief that she had contributed to a hostile work environment, swapped jobs without supervision's approval, and had engaged in conduct and made comments suggesting that she was attempting to create a division between employees and supervision.    A copy of the Employee Discipline Guide for McDowell is located at **EXHIBIT A**.    A copy of the Post-Meeting Notes related to McDowell is located at **EXHIBIT B**.    A copy of my letter to McDowell related to her DML is located at **EXHIBIT C.**

10.    When I met with McDowell to issue her the DML, I did not tell her that she was being disciplined for not speaking to Tammy Caldwell. I did not mention Caldwell's name. I read to McDowell from the Employee Discipline Guide and listened to her comments. Management agreed to have monthly follow-up meetings with McDowell to give her feedback on her progress under the terms of the DML.

11.    Based on a recommendation from Facilities Supervision, McDowell's employment was terminated on or about September 16, 2005, for not meeting management's expectations under the terms of her DML.

12.    I was involved in the decision to terminate McDowell's termination. Neither race nor gender played any role in the decision to terminate McDowell's employment.

13.    Stephanie Sanders also historically had been a good performer. Sanders was issued a Written Reminder in August 2005 based on information uncovered in the harassment investigation and management's inquiry into unauthorized job swaps. We believed that she had engaged in harassing conduct towards co-workers, failed to participate in meetings with supervision, and swapped job assignments without supervision's approval. A copy of the Employee Discipline Guide for Sanders is located at **EXHIBIT D.**

14.    In October 2005, I became aware that Sanders had failed to report to work for several days and was not keeping her supervision informed regarding her absences. Deborah Crutchfield sent Sanders a letter on or about October 21, 2005, informing her that her failure to keep her supervision informed of her status was grounds for discipline and urging her to contact her supervision immediately. At that time, Crutchfield also forwarded FMLA paperwork to Sanders and advised Sanders that she needed to submit the paperwork to the Safety and Health Department within five (5) days. Although Sanders called and left a message acknowledging Crutchfield's letter, she neither submitted the FMLA paperwork nor reported back to work. As such, on November 1, 2005, her employment was terminated for Job Abandonment. A copy of the Termination Letter to Sanders is located at **EXHIBIT E.**

15.    Neither race nor gender played any role in the decision to terminate Sanders' employment.

16.    After the termination letter to Sanders was mailed, Sanders faxed to my assistant a letter reflecting her dissatisfaction with Plant Farley and its management. The letter neither stated that Sanders was resigning her employment nor was it signed by Sanders. As such, I did not consider it to be a valid letter of resignation. Neither Sanders' race nor her gender played any part in my decision to not accept Sanders' November 1, 2005 letter as a letter of resignation.

17.    My earliest recollection of McDowell and Sanders is that they were energetic workers who seemed to like working together. It was not unusual at Plant Farley for Helpers to pair up and work together, particularly early on in a Helper's career when he or she was still learning the job. After a period of time, however, management expects Helpers to have gained the confidence and competence to do most job assignments on their own.

18.    McDowell and Sanders continued to pair up well after they had navigated the initial learning curb. I observed them performing jobs together that were one (1) person jobs. Their continued pairing up raised concerns about efficiency in my mind while I was Assistant General Manager and Plant General Manager. I also know that my predecessor, Don Grissette, had concerns about productivity and efficiency when he saw them and other Helpers paired up and doing jobs that only one (1) Helper was needed to perform.

19.    Management's concerns about McDowell and Sanders pairing up to work together were solely based on issues of efficiency and productivity. Neither race nor gender played any role in my concerns over them working together, and I am not aware of race or gender being raised by any other member of management or supervision.

20.    From time to time, senior management will have Plant Security post the picture of a terminated employee whom management believes might be a security concern if he/she returned to the Plant. Posting the former employee's picture is intended

to be a visual reminder to Security Officers that the individual should not be allowed entry to the Plant. The terminated employee's picture is maintained in a binder kept in the Security booth at the Plant's front gate.

21.    Neither race nor gender are a factor in senior management's decision whether or not to post a separated employee's picture at the front gate.

I declare under the penalty of perjury that the foregoing is true and correct.


_J. Randal Johnson_
J. Randal Johnson

Date:    12-14-06



## Employee Discipline Guide

**Southern Nuclear**



| | |
|---|---|
| **Employee Name:** Janell McDowell | **Job Title:** Helper |
| **Emp. No.** | **Date:** 8 /16 /05 |
| **Department:** Facilities | **Division, Plant, etc.:** Plant Farley |

*This guide is to help supervisors prepare for and document employee discussions and discipline. By itself it will usually be sufficient documentation for Coaching and Oral Reminders; for Written Reminders and DML's, use this sheet to prepare a letter to the employee. This guide is intended for use with formal discipline only and should not be completed for coaching.*

## PRE-MEETING PREPARATION

**Brief Description of Problem:**
Harassment of co-worker; failure to follow work instructions; and lack of loyalty, competitiveness, and efficiency.

*Please copy and paste the following symbol as needed to designate appropriate responses below:* ☒

**Date(s) of previous discussion(s) about this problem:**

Is employee currently in an active level of Discipline?  ☐ Yes  ☒ No
☐ Oral Reminder   ☐ Written Reminder   ☐ DML

**Was administered on:** (date)    **for:** (reason)

**Desired Performance:**
Employees are expected to follow the company's non-harassment policy and to be committed to a work environment free of intimidation and harassment. Employees have the responsibility to report to supervision the status of work assignments, and to contribute to the loyalty, competitiveness, and efficiency of the department.

**Actual Performance:**
You encouraged the job steward to meet with a co-worker regarding items that you or others felt the co-workers needed to change. The meeting was harassing in nature as has been your conduct in the workplace toward certain co-workers. Your comments and conduct also indicate that you are attempting to create a division between the employees and supervision. Additionally, you have swapped job assignments with co-workers after you have been instructed not to by Facilities supervision.

**Impact/business reason why employee must solve this problem:**
The company is on notice of a hostile and intimidating work environment created in part by your actions. Swapping job assignments without obtaining supervisory concurrence impedes the supervisor's ability to hold individuals accountable for their actions.

**Consequences to employee for failing to improve to an acceptable level:**
Termination of employment.

Other factors to consider in evaluating this problem:

☐ Length of Service      ☐ Recent discussions about this or other problems

☐ Overall work record     ☐ Need to discuss with others for consultation/approval

This conversation is intended to be:

| ☐ Oral Reminder | ☐ Written Reminder | ☒ DML | ☐ Other |
|---|---|---|---|



DEFENDANT'S EXHIBIT
2 McDowell

Completed by: _____    Date: 8-19-05

McDowell v. Southern Nuclear
298

EXHIBIT
Blumberg No. 5119
B

# POST-MEETING NOTES

Date/Time of Discussion    8-17-05  —  14:10

Location    GM office - Farley

Company representative(s) present    Randy Johnson and Chere Johnson

Union representative(s) present    Tammy Swift and Janell McDowell

[✓] Employee agreed to solve the problem
[ ] Employee did **not** agree to solve the problem
[ ] Employee did **not** recognize that there is a problem

---

Employee action plan...Employee committed to solve the problem by:

Committed to performing not job duties in a way such
as not to create a hostile environment. Employee admitted
agreed to obtain fac. supervision prior to swapping jobs.
if permission concurrence when

Significant issues raised by:

**Employee:**    Does not feel she harassed anyone nor does she feel
she contributed to a hostile work enviro Believes she obtained
permission to swap jobs.

**Union:**

---

This discussion was a:    [ ] Oral Reminder
[ ] Written Reminder...(additional documentation necessary)
[✓] DML...(additional documentation necessary)

**Additional comments:**

**Follow-up dates/plans:**    Monthly follow-ups with FAC supv.

Southern Nuclear
Operating Company, Inc.
Post Office Drawer 470
Ashford, Alabama 36312

EXHIBIT

C



TO:          Janell McDowell
FROM:        Randy Johnson
DATE:        August 18, 2005
SUBJECT:     Decision-Making Leave

**SOUTHERN COMPANY**
*Energy to Serve Your World* ℠

In our meeting on August 16, 2005, we discussed harassment of co-worker; failure to follow work instructions; and lack of loyalty, competitiveness, and efficiency. Additionally, you have swapped job assignments with co-workers after you have been instructed not to by Facilities supervision. We discussed that the company is on notice of a hostile and intimidating work environment created in part by your actions. Swapping job assignments without obtaining supervisory concurrence impedes the supervisor's ability to hold individuals accountable for their actions.

As a result of your actions, you were issued a Decision-Making Leave. This positive discipline will remain active and in your personnel file for 18 months. You were instructed to take a day off with pay to consider the impacts of your actions, the future expectations you must abide by and to return and inform your management of your interest to remain employed or not as a Helper at Farley Nuclear Plant.

We discussed that employees are expected to follow the company's non-harassment policy and to be committed to a work environment free of intimidation and harassment. Employees have the responsibility to report to supervision the status of work assignments, and to contribute to the loyalty, competitiveness, and efficiency of the department. Failing to improve or should any other problems occur which warrants formal discipline, will result in termination of your employment.

You indicated that you were committed to performing your job duties in a way such as not to create a hostile environment. You also committed to not swapping jobs without supervisor concurrence.

I am confident that you understand the meaning of our discussion and the necessary expectations for your future performance. I am confident that you understand the consequences for failure to fully support your commitment.

I look forward to working with you through this situation and moving to a productive future.

Sincerely,

Randy Johnson

Randy Johnson

EXHIBIT

D

**Discipline Guide**                                          **Southern Nuclear**

| Name:  Stephanie Sanders | Job Title: Helper |
|---|---|
| **Emp. No.** | **Date:** 8 /17 /05 |
| **Department:** Facilities | **Division, Plant, etc.:** Plant Farley |

*This guide is to help supervisors prepare for and document employee discussions and discipline. By itself it will usually be sufficient documentation for Coaching and Oral Reminders; for Written Reminders and DML's, use this sheet to prepare a letter to the employee. This guide is intended for use with formal discipline only and should not be completed for coaching.*

**PRE-MEETING PREPARATION**

**Brief Description of Problem:**
Harassment of co-worker; failure to follow work instructions; and lack of loyalty, competitiveness, and efficiency.

*Please copy and paste the following symbol as needed to designate appropriate responses below:* ☒

| Date(s) of previous discussion(s) about this problem: | |
|---|---|

Is employee currently in an active level of Discipline?   ☐ Yes    ☒ No
☐ Oral Reminder    ☐ Written Reminder    ☐ DML

| Was administered on: (date) | for:  (reason) |
|---|---|

**Desired Performance:**
Employees are expected to follow the company's non-harassment policy and to be committed to a work environment free of intimidation and harassment. Employees have the responsibility to converse with management on work assignments and status, and to contribute to the loyalty, competitiveness, and efficiency of the department.

**Actual Performance:**
Your conduct in the work place has been harassing in nature toward certain co-workers. You do not actively participate in meetings with supervision. Additionally, you have swapped job assignments with co-workers after you have been instructed not to by Facilities supervision.

**Impact/business reason why employee must solve this problem:**
The company is on notice of a hostile and intimidating work environment created in part by your actions. Swapping job assignments without obtaining supervisory concurrence impedes the supervisor's ability to hold individuals accountable for their actions.

**Consequences to employee for failing to improve to an acceptable level:**
Additional discipline up to and including termination of employment.

Other factors to consider in evaluating this problem:

☐ Length of Service          ☐ Recent discussions about this or other problems

☐ Overall work record       ☐ Need to discuss with others for consultation/approval

This conversation is intended to be:

| ☐ Oral Reminder | ☒ Written Reminder | ☐ DML | ☐ Other |
|---|---|---|---|

*JRJ*     *WB*

DEFENDANT'S
EXHIBIT
*3 Sanders*

**POST-MEETING NOTES**

Date/Time of Discussion   8/17/05   11:37

Location   Jim Parrish's office

Company representative(s) present   Deborah Critchfield   ~~Dan Hunter~~ Jim Parrish   *per 8/17/05*

Union representative(s) present   Dan Hunter

[✓] Employee agreed to solve the problem   Employee states that she did not harass anyone
[ ] Employee did **not** agree to solve the problem
[ ] Employee did **not** recognize that there is a problem

Employee action plan...Employee committed to solve the problem by:

1. Read and understand Corp Policy 703
2. Continue to abide by the policy
3. Do not jump boss without supervisor concurrence
4. Communicate openly with the facilities supervisor to contribute to the loyalty, competitiveness and efficiency of the department.

Significant issues raised by:

**Employee:**   Employee states that she did not harass anyone

**Union:**

This discussion was a:    [ ] Oral Reminder
                       [✓] Written Reminder...(additional documentation necessary)
                       [ ] DML...(additional documentation necessary)

**Additional comments:**

Follow-up dates/plans:   Facilities supervision will conduct follow-up meetings monthly.

Completed by:   *Jim Parrish*        Date:   8-17-05

Southern Nuclear
Operating Company, Inc.
Post Office Drawer 470
Ashford, Alabama 36312

TO:          Stephanie Sanders

FROM:        Jim Parrish                        **SOUTHERN**
                                                **COMPANY**
DATE:        August 18, 2005                    *Energy to Serve Your World™*

SUBJECT:     Written Reminder

In our meeting on August 17, 2005, we discussed that your conduct in the work place has
been harassing in nature to certain co-workers. You do not actively participate in
meetings with supervision. Additionally, you have swapped job assignments with co-
workers after you have been instructed not to by Facilities supervision. We discussed that
the company is on notice of a hostile and intimidating work environment created in part
by your actions. Swapping job assignments without obtaining supervisory concurrence
impedes the supervisor's ability to hold individuals accountable for their actions.

As a result of your actions, you were issued a Written Reminder. This positive discipline
will remain active and in your personnel file for 12 months. We discussed that
employees are expected to follow the company's non-harassment policy and to be
committed to a work environment free of intimidation and harassment. Employees have
the responsibility to converse with management on work assignments and status, and to
contribute to the loyalty, competitiveness, and efficiency of the department. Failing to
improve could result in additional discipline up to and including termination.

You indicated that you would commit to reading and understanding the Corporate Policy
703 and continue abiding by the Policy. Additionally, you committed to not swapping
jobs without supervisor concurrence.

I am confident that you understand the meaning of our discussion and the necessary
expectations for your future performance. I am confident that you understand the
consequences for failure to fully support your commitment.

I look forward to working with you through this situation and moving to a productive
future.

Sincerely,

*Jim Parrish*

Jim Parrish

**Southern Nuclear
Operating Company, Inc.**
Post Office Drawer 470
Ashford, Alabama 36312

> EXHIBIT
> E



**SOUTHERN
COMPANY**
*Energy to Serve Your World™*

November 1, 2005

Stephanie Sanders

Dothan AL

Dear Ms. Sanders:

The purpose of this letter is to address your recent absences, your failure to keep management informed, and your failure to submit the initial FMLA paperwork. While on the first three nights (October 11th – 13th) you either called in or management called you, you did report to work and did not call to report that you would be absent since Saturday October 15th.

Consequently, management wrote a certified letter to you, which you signed for on Wednesday, October 26th. This letter gave you five days from the receipt of the letter to provide the initial FMLA paperwork to Effie Manley so that a determination could begin on whether the absences were covered under FMLA. The fifth day was Monday, October 31st and the FMLA paperwork was not provided to Effie Manley as was required. While you did call and leave a voice mail for supervision on October 26th, stating you would be in the first of this week with paperwork, you did not provide the paperwork by the fifth day, nor have you otherwise kept management informed regarding your continued absences as was required per the certified letter. It was clear that failure to be compliant with the terms laid out in the certified letter would result in discipline up to and including termination. Additionally, you are currently on an active Written Reminder.

Consequently, your employment is being terminated effective today, November 1, 2005, on the basis of job abandonment.

Randy Johnson

Nuclear Plant General Manager

Deborah Crutchfield

Facilities Supervisor

> DEFENDANT'S
> EXHIBIT
> S Sanders



Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Stephanie Sanders

Dothan, AL

~~Stephanie Sanders~~

4a. Article Number
7000 0520 0013 6361 1078

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery
11-3

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

8. Addressee's Address (Only if requested and fee is paid)

Thank you for using Return Receipt Service.

PS Form 3811, December 1994          Domestic Return Receipt